2012 ND 142

**Randy HOLKESVIG, Plaintiff and Appellant**

v.

**Peter David WELTE, Defendant and Appellee**
(No. 20110373)

**Randy Holkesvig, Plaintiff and Appellant**

v.

**Meredith Huseby Larson, Defendant and Appellee**
(No. 20110374)

**Randy Holkesvig, Plaintiff and Appellant**

v.

**Christopher Smith, Defendant and Appellee.**
(No. 20110375)

Nos. 20110373, 20110374, 20110375.

Supreme Court of North Dakota.

July 12, 2012.

Rehearing denied August 16, 2012.

Randy Holkesvig, self-represented, Fargo, ND, plaintiff and appellant.

Daniel L. Gaustad, Grand Forks, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Randy Holkesvig appeals from a district court order modifying an order enjoining him from filing certain further lawsuits without leave of court and denying his request for leave to commence four new lawsuits. We affirm, concluding the district court acted within its discretion in denying Holkesvig's motion to file four new lawsuits and in prohibiting him from filing certain further lawsuits.

I

[¶ 2] In 2008, Holkesvig was charged with stalking and violating a disorderly conduct restraining order. After pleading guilty to the stalking charge, Holkesvig sued Peter Welte, Meredith Larson, and Chris Smith, individuals involved in the criminal proceedings against Holkesvig. The district court granted summary judgment for the defendants, awarding them costs and disbursements. Holkesvig appealed, and the decision was affirmed. *Holkesvig v. Welte*, 2011 ND 161, ¶ 1, 801 N.W.2d 712. During the pendency of the appeal, Holkesvig filed additional pleadings and documents with the district court. The district court issued an order awarding the defendants $1,000 in attorney fees and prohibiting Holkesvig from filing further documents with the court, except to the extent required to resume or continue his appeal. Despite the district court's order, Holkesvig continued to file documents with the district court, resulting in Welte, Larson, and Smith filing a motion to strike the documents and to impose sanctions against Holkesvig for violating the court's order. In March 2011, without holding a hearing, the district court found Holkesvig in contempt of court, struck his additional documents, and ordered him to pay the defendants a $1,000 remedial sanction for the contempt. The March 2011 order also enjoined Holkesvig from commencing any new lawsuits based on the events related to his underlying criminal conviction without obtaining leave of court. Holkesvig appealed the March 2011 order, which was reversed and remanded because Holkesvig did not receive a hearing on the contempt motion. *Holkesvig v. Welte*, 2012 ND 14, ¶ 1, 809 N.W.2d 323.

[¶ 3] In September 2011, Holkesvig sought leave of court to file four new lawsuits relating to the underlying criminal proceedings against him. In October 2011, the district court denied Holkesvig's mo-

tion to file four new lawsuits and stated the language of its March 2011 order, which allowed for new actions to be commenced only with leave of court, was "simply an invitation for more of the same." The district court's October 2011 order modified its March 2011 order, eliminating the exception of allowing further claims arising from the same events to be commenced with leave of court.

## II

[¶ 4] On appeal, Holkesvig raises the following five issues:

I. Did Peter Welte knowingly and intentionally block the Plaintiff from gaining access to the closed files in the Chris Moore/Heather Eastling 2008 civil cases in December 2010, by having another Assistant DA block my access to get it without a legal or proper protective order in place that became a Brady violation, which in turn violated [the] 5th and 14th Amendment[s] to the U.S. Constitution, which implies a ... 42 U.S.C. § 1983 claim[?] ...

II. Did Peter Welte knowingly and intentionally issue internal memos to various Grand Forks County employees, ordering them not to give or share any information with me concerning [the related cases]? ...

III. Did Meredith Larson knowingly and willingly contact Chris Moore's Attorney Shannon Uglem in October 2010 with an email and/or phone call, then offered her input regarding Moore's January 2008 Qwest home phone records that Meredith Larson intentionally withheld which was the exculpatory evidence for my 6–5–08 hearing? ...

IV. Did Judge Corwin knowingly and intentionally abuse the judicial process by violating my substantive and procedural due process rights, which could imply a[n] ... 18 U.S.C. § 241 or ... 18 U.S.C. § 242 claim? ...

V. W[ere] the injunctions that Judge Corwin issued on 3–31–11 and 10–25–11 legal and were the events between 11–8–11 and 11–14–11 legal, ethical, and justified?

[¶ 5] Holkesvig's arguments under the first three issues are merely attempts to relitigate the dismissal of his malicious prosecution claims against the defendants, which we have previously reviewed and affirmed. *Holkesvig*, 2011 ND 161, ¶ 1, 801 N.W.2d 712. In the appeal from the dismissal of Holkesvig's malicious prosecution action, we addressed one of the four required elements for the tort of malicious prosecution and stated Holkesvig had the burden of establishing the underlying criminal proceedings terminated in his favor. *Id.* at ¶ 8. Because Holkesvig *pled guilty* to the stalking charge against him, we noted he "cannot establish that the criminal proceedings terminated in his favor, [and] *he cannot prevail as a matter of law* on his malicious prosecution action." *Id.* at ¶ 10 (emphasis added). *See also Holkesvig*, 2012 ND 14, ¶ 7, 809 N.W.2d 323 (noting "Holkesvig's arguments about the merits of his claims against the defendants are simply irrelevant to this appeal [regarding the district court finding Holkesvig in contempt]"). "The doctrines of res judicata and collateral estoppel bar courts from relitigating claims and issues in order to promote the finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources." *Ungar v. N.D. State Univ.*, 2006 ND 185, ¶ 10, 721 N.W.2d 16. "Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." *Id.* at ¶ 11. "Collateral estoppel, or issue preclu-

sion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action." *Id.* Only parties, or their privies, to the prior proceedings are bound by res judicata and collateral estoppel. *Id.* Because the first three issues framed by Holkesvig in this appeal involve claims and issues that have been raised or could have been raised in prior actions between the same parties, we conclude they are barred by res judicata and collateral estoppel. Only the final two issues raised by Holkesvig contain arguments that are relevant to this appeal.

[¶ 6] Holkesvig argues the district court should not have denied his motion to file four new lawsuits and should not have barred him from filing further claims arising from or relating to the underlying criminal proceedings against him. Orders enjoining certain future litigation are reviewed under the abuse of discretion standard. *See Fed. Land Bank of St. Paul v. Ziebarth,* 520 N.W.2d 51, 56 (N.D. 1994); *State ex rel. Emps. of the State Penitentiary v. Jensen,* 331 N.W.2d 42, 47 (N.D.1983). After a court has issued such an injunction, a district court's denial of a motion for leave to file further lawsuits is similar to a denial of a motion for leave to amend a complaint, which is reviewed for abuse of discretion. *See Johnson v. Hovland,* 2011 ND 64, ¶ 8, 795 N.W.2d 294. "A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

## A

[¶ 7] Holkesvig contends the order denying his motion to file four new lawsuits should be vacated because of the

district court judge's "prior, illegal, immoral and biased conduct[.]" Holkesvig's assertions of bias, prejudice, and misconduct on the part of the district court appear to be based merely on the court's failure to rule in his favor. "Adverse rulings alone are not evidence of judicial bias or partiality." *Lucas v. Riverside Park Condos. Unit Owners Ass'n,* 2009 ND 217, ¶ 12, 776 N.W.2d 801.

[¶ 8] Holkesvig argues the denial of his motion to file four new lawsuits was "unethical, immoral and unjustified, because there was no oral hearing given to me." In his motion seeking leave of court to file four new lawsuits, which was filed on September 27, 2011, Holkesvig requested "that an evidentiary hearing be[ ] held on this matter, *if needed,* and I also request that the Court proceed with no delays or obstructions in deciding this matter, as required by law." (Emphasis added.) Holkesvig did not unequivocally ask for oral argument, and the court implied an evidentiary hearing was not needed by ruling on the motion without one. By issuing a decision on October 25, 2011, the court complied with Holkesvig's request to "proceed with no delays or obstructions in deciding this matter[.]"

[¶ 9] Under N.D.R.Ct. 3.2(a)(3), the party requesting oral argument is required to secure a time for oral argument and serve notice upon all other parties, which Holkesvig failed to do. While Holkesvig claims he "was denied or given the runaround or given improper advice" when attempting to schedule oral argument, he fails to note his request for oral argument was not filed until November 8, 2011. Holkesvig's request at that point—after the court had issued its order denying the motion—was untimely. Rule 3.2(a)(3), N.D.R.Ct., provides requests for oral argument must be filed "not later than seven days after expiration of the time for filing

the answer brief." Because Holkesvig's motion was filed September 27, 2011, the time for filing an answer brief expired October 11, 2011. *See* N.D.R.Ct. 3.2(a)(2). Under N.D.R.Ct. 3.2(a)(3), Holkesvig's request for oral argument should have been filed by October 18, 2011. The court issued its order denying the motion on October 25, 2011. Not only was Holkesvig's request made after the time allotted by N.D.R.Ct. 3.2, but it was made after the court issued its decision on Holkesvig's motion.

[¶ 10] Holkesvig also argues the court abused its discretion in denying his motion to file four new lawsuits, but he offers no legally sound reasoning demonstrating an abuse of discretion. The defendants contend Holkesvig's motion was properly denied because the four new lawsuits were barred by res judicata and collateral estoppel. In his motion, Holkesvig stated the four new lawsuits would "address the additional wrongs that [were] done to him in October 2010 by Meredith Larson and Shannon Uglem, and in December 2010 by Peter Welte, Tom Falck." Holkesvig added, "These 4 new lawsuits . . . contain true information that I want to use to clear my name and prove my innocence." The allegations in Holkesvig's motion again related to the underlying criminal proceedings against him and essentially amounted to malicious prosecution claims. Holkesvig previously brought claims against the defendants arising from the same set of facts, the district court dismissed those claims, and we affirmed. *Holkesvig,* 2011 ND 161, ¶ 1, 801 N.W.2d 712. Because Holkesvig pled guilty under a voluntary plea agreement to the underlying criminal offense, he could not prevail on a claim of malicious prosecution as a matter of law. Although Holkesvig listed additional defendants and cited different legal theories in his motion, the claims he sought to file are derivative of those brought against the defendants in Holkesvig's previous claims. Holkesvig is simply attempting to relitigate the same claims and issues, and the district court did not abuse its discretion in denying his motion to file four new lawsuits.

## B

[¶ 11] Holkesvig asserts the district court "issued illegal injunctive orders from 3–31–11 and 10–25–11 that literally blocks and prevents me from filing . . . new lawsuits." Holkesvig claims the court's October 2011 order, which eliminated the exception in the March 2011 order for additional proceedings to be commenced with leave of court, "proves beyond any reasonable doubt that [the district court judge] has and will continue to display bias and prejudice against me that has become an abuse of discretion matter." The defendants respond the district court's October 2011 order does not bar Holkesvig from "filing new lawsuits in total, but only restricts the commencing of 'new' lawsuits as they relate to the circumstances surrounding this case." The defendants note the court's March 2011 order enjoined Holkesvig from filing additional lawsuits relating to the same set of underlying facts without first obtaining court approval, and the defendants assert the court did not abuse its discretion by modifying the terms of the March 2011 order on its own initiative.

[¶ 12] In *Federal Land Bank of St. Paul v. Ziebarth,* the district court was faced with "an endless series of vexatious and meritless litigation" continually filed by Ziebarth. 520 N.W.2d at 55. The suits filed by Ziebarth all related to underlying foreclosure and eviction actions that had previously been decided on appeal to this Court. *Id.* The district court in that case enjoined Ziebarth from filing further actions relating to or arising out of the fore-

closure and eviction actions without first obtaining court approval. *Id.* at 55–56. In deciding whether to uphold the injunction in *Ziebarth*, we considered similar injunctions restricting future actions of particularly litigious parties. *Id.* at 57. We noted the injunction issued in *Brakke v. Rudnick*, 409 N.W.2d 326 (N.D.1987), which prohibited the Brakkes from commencing *any* suit against *any* party in that judicial district without obtaining court approval, was reversed on appeal because, although the Brakkes had often been involved in litigation, they were not always the instigators, and the other litigation did not involve the same transactions or factual circumstances. *Ziebarth*, at 57. We also observed portions of the injunction issued in *Farm Credit Bank of St. Paul v. Brakke*, 483 N.W.2d 167 (N.D.1992), were struck down on appeal because they were overly broad and vague, unduly restricting access to the courts and raising First Amendment implications. *Ziebarth*, at 57–58. After reviewing both *Brakke* cases, we upheld the district court's order that Ziebarth be enjoined from filing further actions relating to the same facts without court approval, concluding the injunction was narrowly tailored to specifically address "a lengthy pattern of abuse of the legal process, characterized by Ziebarth's relentless attempts to relitigate issues that long ago became res judicata." *Id.* at 58. We stated:

> A court's authority to stem abuses of the judicial process arises not only from the applicable rules and statutes, ... but also from the court's inherent power to control its docket and to protect its jurisdiction and judgments, the integrity of the court, and the orderly and expeditious administration of justice.... [T]he rule applies with equal force to *pro se* litigants, "for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and

abuse already overloaded court dockets."

*Id.* (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986)). We then repeated our admonition given "to particularly recalcitrant litigants. The public interest demands that, at some point, there be an end to litigation, so the parties may go about their normal business." *Id.* at 59.

[¶ 13] At oral argument, Holkesvig demonstrated his intent to continually pursue the same arguments, claiming res judicata should not apply to his case: "There's res judic[at]a rules that don't apply that I've explained in my brief.... Res judicata doesn't exist if a judge abuses their discretion.... Res judicata might have to be waived in this instance." We hold the district court acted within its discretion in enjoining conduct specifically related to Holkesvig's prior abuses, and the injunction is narrowly tailored to address Holkesvig's continued attempts to relitigate settled issues.

[¶ 14] The district court's March 2011 order stated:

> [U]nless prior and express leave of court approval is first obtained, Holkesvig shall hereafter be barred and enjoined from commencing any new lawsuits or causes of action, in any district court of the State of North Dakota, that arises from or relates to any of the following:
>
> a. Holkesvig's 2008 stalking conviction and charge for violating a disorderly conduct restraining order ...;
>
> b. The 2008 and 1998 disorderly conduct restraining orders obtained against Holkesvig and in favor of Heather Eastling and Christine Moore ...;
>
> c. The lawsuit Holkesvig has brought against Christine Moore ...;

d. The lawsuit Holkesvig has brought against Gary Grove . . .; or

e. This lawsuit.

The October 2011 order modified the March 2011 order "by eliminating the exception for proceedings commenced with leave of court. In all other respects, [the March 2011 order] remains in effect."

[¶ 15] In contrast to the injunction issued in *Brakke v. Rudnick*, 409 N.W.2d at 334, Holkesvig is not barred from filing any lawsuit against any party. Rather, Holkesvig is only prohibited from filing lawsuits relating to his underlying stalking conviction. Unlike the injunction at issue in *Farm Credit Bank of St. Paul v. Brakke*, 483 N.W.2d at 171–72, no portion of the injunction against Holkesvig is so broad or vague as to unduly restrict his access to the courts or raise First Amendment concerns. As in *Ziebarth*, the district court in this case exercised its inherent power to control a particularly recalcitrant litigant and acted within its authority to stem further abuses of the judicial process by Holkesvig. There must be a finality to this litigation so the parties may go about their normal business.

### III

[¶ 16] We conclude the district court did not abuse its discretion in denying Holkesvig's motion to file four new lawsuits or in prohibiting him from filing further lawsuits arising out of the underlying criminal proceedings. We affirm.

[¶ 17] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.